# Rose *v.* Lewis.

### *Assumpsit.*

(Decided November 28, 1912. 60 South. 146.)

1. *Sales; Action by Buyer; Terms of Contract.*—In an action for a failure to deliver lumber purchased under a contract requiring the buyer to open a confirmed bank credit in his name to meet and protect the business, the evidence examined and held to show that the intention of the parties was that such bank credit should be arranged within a reasonable time after the execution of the contract.

2. *Same; Parol Evidence.*—Where there is no ambiguity as to the meaning of a provision in a contract of sale, the conduct of the parties after the execution of the contract should not be considered in construing such provision.

Appeal from Mobile Circuit Court.

Heard before Hon. Samuel B. Browne.

Assumpsit by Alfred Rose against James A. Lewis for breach of contract in the sale of lumber. Judgment for defendant and plaintiff appeals. Affirmed.

Pillans, Hanaw & Pillans, for appellant. The fundamental law of construction of contracts is to seek to ascertain and enforce the intention of the parties, and what is a reasonable time for the doing of the thing where no time is fixed must be determined by the facts and circumstances of each case, as it arises.—*Cocker v. Mfg. Co.*, Fed. Case 2932. This applies in the present case as to the time when plaintiff should open a confirmed bank credit.—*Murrell v. Whiting*, 32 Ala. 54; *Neilson v. Mayor*, 85 N. Y. Supp. 1069. It was not Rhodes' duty to open such bank credit until Lewis had delivered the lumber, as he was certainly not entitled to enjoy the fruits thereof until he was entitled to pay for having delivered.—*Amyar v. Beers*, 17 Am. Dec.

546 and note. Where reasonableness can be decided on settled legal principles without passing on the fact, it is for the court, otherwise it is for the jury.—*Drake v. Goree,* 22 Ala. 409; *Brown v. Johnson,* 42 Ala. 208. Applying these principles to the case in hand it is clear that the court erred in its oral charge, and in the charges given at the request of defendant.

GREGORY L. & H. T. SMITH, for appellee. The rule stated in the charges of the court was precisely that which has been established by the best authorities.— *Cotton v. Cotton,* 75 Ala. 345; *Watt v. Gann,* 114 Ala. 264; *McFadden v. Henderson,* 128 Ala. 230; 20 N. W. 559; 71 Pac. 1032; 4 H. & N. 631; 17 Wend. 354; 67 Atl. 45.

DE GRAFFENRIED, J.—Alfred Rose brought this suit against James H. Lewis for damages for the alleged breach of a contract. The plaintiff claims that in September, 1905, the defendant made an agreement to deliver to him, at Mobile, Ala., in the month of December, 1905, a large lot of lumber, for which the plaintiff was to pay the defendant $15 per 1,000 feet, and that, after the contract was made, the time for the delivery of the lumber was, at the request of the defendant, extended to January, 1906. The plaintiff and the defendant were acquainted with each other, and we think that the evidence establishes beyond question that the plaintiff was a man of but little, if any, means. The defendant was not a sawmill man, a fact which was known to the plaintiff when the contract was made, and to assemble the large amount of lumber called for by the contract—nearly 2,000,000 feet—it was necessary for the plaintiff to place orders with a large number of mills. These orders were, of course, placed with the mills

upon the *credit* of the defendant. The contract between
the plaintiff and the defendant, dated September 5,
1905, is set out in the bill of exceptions, and contains
the following significant provision: "Payment: *Net
cash* against delivery to vessel; prompt settlement. A
confirmed bank credit will be opened in Mobile in buy-
er's name to meet and protect this business." Rose, the
plaintiff, was the *buyer,* and as throwing light on the
above excerpt from the contract, and really forming a
part of it, we quote the following from a letter from
Rose to Lewis, dated September 2, 1905: "Payment:
Net cash against delivery. There will be confirmed
bank credit opened here in my favor to protect this ship-
ment." No confirmed bank credit was ever opened in
favor of Rose—the buyer—in any bank in Mobile.

On or about the last day of December, 1905, Lewis,
the seller, notified Rose, the buyer, that he would de-
liver no lumber under the contract, and none was ever
delivered under it. This suit was brought to recover
the damages which Rose claims that he suffered there-
by. The defendant claims that, as Rose at no time had
opened in Rose's favor a confirmed bank credit in Mo-
bile to "meet and protect this business," Rose himself
breached the contract, and therefore can claim no rights
under it. Rose, on the other hand, claims that, under
the contract, he was not to have the confirmed "bank
credit" until the time for shipment arrived; that the
bank credit was provided in the contract simply to
guarantee the payment of the cash when the time ar-
rived for the seller to deliver the lumber; and that, as
the time for the delivery of the lumber had been, by
mutual agreement, extended to some time in January,
1906, he did *not* violate his contract. Both the plain-
tiff and the defendant agree that, under the terms of the
contract, the plaintiff had, after the making of the con-

tract, a "reasonable time" within which to establish the confirmed bank credit, and the question is: What, under the contract, was such reasonable time?

We have already stated the general situation of the parties when the contract was made, and it may be of aid, in determining the question now under consideration, to know that on September 5, 1905—the same day on which the plaintiff made the above contract with the defendant—the said Rose made a contract to sell the identical lumber which he had contracted to buy from the defendant to the Pitch Pine Lumber Company, of New York, at an advanced price, the delivery to be made to said Pitch Pine Lumber Company at Mobile at the time when, under the terms of the contract involved in this suit, the defendant was to deliver said lumber to the plaintiff. In the contract between the plaintiff and the Pitch Pine Lumber Company we find the following provision: "Settlement: Letter of credit to be opened by buyers in seller's favor at a bank in Mobile." In a letter from the plaintiff to the said Pitch Pine Lumber Company, dated December 26, 1905, and written at Mobile, Ala., we find the following: "I regret to be compelled to wire you as I did , but I had no option in the matter, inasmuch as I am to-day notified by Lewis in writing that, unless he has $10,000 advances, he cannot carry this order over December 31st. *He points out that I am unable to advise him that the credit called for by his contract has yet been opened,* though the *delivery date has expired, all but a few days.* I pointed out the absurdity of his position, as well as the injustice of it; but I could make no impression, so wired you the facts," etc. The correspondence between Rose and Lewis shows that Rose claimed that, at Lewis' written request, the time for delivery had been extended to January; that Lewis was, on the 26th day of De-

cember, 1905, denying that any such extension had been agreed upon, and was demanding an *advance* of $10,000 on the lumber as a condition precedent to such extension of the time for the delivery of the lumber.

We are satisfied that by the words above quoted, "I pointed out the absurdity of his position, as well as the injustice of it," Rose meant the absurdity and injustice of the denial by Lewis of the fact that the time for the delivery had been extended to January, and that said expression had no reference to the inability of Rose to advise Lewis that the "credit called for by his contract"—the "confirmed bank credit"—had been opened with any bank in the city of Mobile. While there is nothing in any letter, or in any of the other evidence set out in the bill of exceptions, except the above-quoted expression contained in the letter from the plaintiff to the Pitch Pine Lumber Company, indicating that Lewis ever, in any way, called the attention of the plaintiff to the absence of the "confirmed bank credit," or that Lewis refused to deliver the lumber, or to carry out his part of the contract, on account of such absence of the "confirmed bank credit," nevertheless the quoted expression indicates that the plaintiff, on December 26, 1905, recognized that the contract on *his* part had not been complied with, because the ·defendant "points out that I am unable to advise him that the credit called for by his contract has yet been opened, though the delivery date has expired, all but a few days." In other words, says the plaintiff to the Pitch Pine Lumber Company, "Lewis refuses to carry out his agreement to deliver the lumber in January, unless he at once receives an advance of $10,000 on the purchase price of the lumber, and while he has *no right* to make that demand, I am unable to hold him to his contract because of the absence of the confirmed bank

credit which you agreed to arrange for me with a bank in Mobile."

In his testimony the plaintiff says: "A confirmed bank credit is obtained in lumber transactions by a business house arranging with its own bank to take up and pay for upon presentation (either directly or through some other bank) certain papers known as shipping documents, generally consisting of a draft attached to a bill of lading, insurance policy, charter party, or freight engagement, specification, and invoice. These documents evidence the shipment of the lumber specified, and form a demand upon the one in whose name they are made out, or to whom they are assigned. To open a credit to provide for such, one can do various things; for example, set aside a deposit in cash covering approximately the *estimated* amount of the invoice, or deposit security or collateral with the bank covering the same, etc. The bank thus secured guarantees to the *seller,* either directly or through another bank, that the shipping documents will be taken up and paid for when presented in proper shape. Upon receipt of such notification by one bank from another, the second bank in turn confirms such arrangement to the person or persons intended, and such notification or confirmation constitutes a confirmed bank credit, and is an *assurance* to the selling party that he *will receive payment for his merchandise when shipped."*

As Rose and Lewis, the parties to the contract under consideration, both resided in Mobile, and as, under the terms of their contract, the lumber was to be paid for in *cash* upon delivery, the confirmed bank credit referred to in the contract was simply an agreement on the part of Rose that he would have a guaranty on the part of a bank in Mobile that the lumber, when delivered, would be paid for in cash. As Rose was a man of

but little means, and as the contemplated transaction involved nearly $30,000, it was but reasonable that the defendant should require the plaintiff to furnish something more than his mere promise to pay for the lumber before he would assume the liabilities incurred by executing the contract. The defendant wanted to *know* that Rose would be able to pay for the lumber, and for this reason the confirmed bank credit was required by the defendant when he agreed to deliver the lumber to Rose at the price agreed upon. Lumber seems to have steadily advanced in price from the time of the execution of the contract until the vessel which was to receive this lumber came to Mobile for the purpose of carrying it to Buenos Ayres, and the defendant, as we have already said, seems not to have disturbed himself about the absence of the confirmed bank credit; but this situation cannot, we think, control the determination of the question in hand. The only purpose which, it seems to us, could have actuated the parties in placing the clause as to a confirmed bank credit in the contract, was that the defendant, dealing, as he was, with a man of but little means, desired positive assurance, while assembling the lumber, that when the lumber was properly assembled, and ready for delivery, the plaintiff would be able to pay for it.

As this is true we think that it is evident that it was the intention of the parties, when the contract was made, that the confirmed bank credit should be arranged with a Mobile bank—not within a *reasonable* time before the date fixed for the delivery of the lumber— but within a reasonable time after the execution of the contract. The above views gather strength when the construction which the plaintiff himself, in the letter which he wrote to the Pitch Pine Lumber Company on December 26, 1905, and from which we have above

33—178

quoted, placed upon the contract which he made, on September 5, 1905, with said Pitch Pine Lumber Company with reference to the sale to that company of this same lumber, is properly considered. In *that* contract the lumber was not—as was the case in the contract now under consideration—to be paid for in *cash,* but only through a "letter of credit to be opened by the buyers in seller's favor at a bank in Mobile," and which "letter of credit," under the evidence of the plaintiff, would enable him, upon a proper delivery of the lumber to a vessel at Mobile, to obtain the cash upon a draft with bill of lading attached drawn by the plaintiff on the Pitch Pine Lumber Company in New York for the price of said lumber.

The italicized portions of the above quoted extract from the said letter—the italics being our own—indicate that the plaintiff was reminding the Pitch Pine Lumber Company that *its* contract with *him* had not been complied with, although that contract did not call for cash upon delivery; and that for that reason he had not been able to meet the letter of his contract with the defendant, which did require payment of the actual cash upon delivery. As the defendant under the terms of his contract was to be paid in cash for his lumber upon its delivery, as the plaintiff could not get the title or possession of any of the lumber until it was all paid for in cash, the above provision as to a confirmed bank credit was useless and meaningless, unless it is to be given the construction which we have above placed upon it. There does not appear to be any doubt or ambiguity as to the meaning of the clause under consideration, and for that reason we do not consider that the conduct of the parties subsequent to the execution of the contract should be considered as throwing light upon the subject. The charges given by the trial court to

the jury at the written request of the defendant, and which are here assigned as error, were in accordance with the views above expressed, and the trial court was free from error in giving them to the jury.

We have above discussed the only question which we are called upon, in this case, to decide. The question as to whether, *after* the execution of the contract, the defendant, by his conduct, *waived* his right to insist upon the above provision of the contract, which, as we have already said, does not appear to possess an indefinite or ambiguous meaning, is not before us, and as the rulings of the trial court on the question in hand are in accordance with our views as we have above expressed them, we are of the opinion that the judgment of the court below should be affirmed.

Affirmed.   All the Justices concur.